Hayward, Parker, O'Leary & Pinsky
225 Dolson Ave., Box 929
Middletown, NY 10940
Tel: (845) 343-6227
Fax: (845) 343-1927
Email mike.pinsky@hpoplaw.com
Mike Pinsky, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

| | |
|---|---|
| In re: <br>     The Potter House, Inc., <br><br>                         Debtor. | Chapter 11 <br><br> Case No. 16-36948 (cgm) |

-----------------------------------------------------x

## MOTION FOR ORDER VACATING AUTOMATIC STAY
## PURSUANT TO 11 U.S.C. §362(d)(1)

Secured creditors Joseph and Terese Montemarano ("Movants"), by their attorneys, Hayward, Parker, O'Leary & Pinsky, respectfully represent as follows:

### Jurisdictional Facts

1.    Jurisdiction for this contested matter is provided by 28 U.S.C. §§ 157 and 1334, and the Standing Order of Reference, General Order M-431, dated January 31, 2012, Preska, C.J.

2.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

### Background Facts

3.    On November 16, 2016, debtor The Potter House, Inc. (the "Debtor") filed its voluntary petition with this Court under chapter 11 of the Bankruptcy Code.

4.    The Debtor is a New York not-for-profit corporation, formed and managed by Curtis Whitted and Mary Whitted. The Debtor owns 3 parcels of real estate in Poughkeepsie, New York, one parcel of which is used as a religious and meeting center. The latter parcel is the one involved in this motion.

5. The Debtor remains in possession of its property, and continues to operate as a debtor in possession, pursuant to Bankruptcy Code §§ 1107 and 1108.

6. On information and belief, on or about June 22, 2000 Curtis Whitted and Mary Whitted acquired a commercial building located at 54 Noxon Street, consisting of two (2) stories and a full basement, partially finished, and having about 7,560 square feet.

7. On March 20, 2008, Curtis Whitted and Mary Whitted borrowed $150,000.00 from the Movants, secured by 54 Noxon Street. Movants are not aware of how these loan proceeds were used, although it seems clear they were not used to repair and maintain Movants' collateral.

8. The documentation of the Movants' loan to Mr. and Mrs. Whitted consists of a Mortgage Note dated March 20, 2008 in favor of Joseph Montemarano and Terese Montemarano (the "Note") in the original principal amount of $150.00.00, and a Mortgage of even date (the "Mortgage "). Copies of the Note and the Mortgage are annexed as Exhibits "A" and "B", respectively.

9. On information and belief, Curtis and Mary Whitted deeded 54 Noxon to the Debtor in 2009 to secure its exemption from the payment of real estate taxes by the City of Poughkeepsie.

10. The Movants and Curtis and Mary Whitted thereafter entered into an Amended and Modified Note dated January 12, 2012, a copy of which is annexed to this motion as Exhibit "C". The interest rate under the Amended and Modified Note is three percent (3%).

11. When the Whitted's failed to pay the Amended and Modified Note, Movants commenced a foreclosure action in the Dutchess County Supreme Court, and obtained a judgment of foreclosure and sale with respect to the Amended and Modified Note and the Mortgage against the Property. A copy of the Judgment of Foreclosure and sale is annexed as Exhibit "D."

12. The petition date indebtedness of Curtis and Mary Whitted and the Debtor to Movants, secured by the Property, is $107,655.16.[1]

13. A recent commercial appraisal of the Property by Valuation Consultants commissioned by Movants is annexed as Exhibit "E."

14. The Valuation Consultants' appraisal reflects an as-is fair market value for the Property of $150,000, with an estimated $100,000 in deferred maintenance. <u>The $100,000 deferred maintenance figure is central to assessing what constitutes "adequate protection" of the Movants' interest in the Property.</u>

## Postpetition Events

15. The Debtor's monthly operating reports in this case reflect, *inter alia*, the following:

| DATE | INCOME | EXPENSES | PROFIT (LOSS) | CASH ON HAND | ACCOUNTS RECEIVABLE |
|---|---|---|---|---|---|
| Nov. 2016 (partial) | $1,502 | $652 | $850 | $200 | N/A |
| Dec. 2016 | 2,455 | 2,365 | 90.18 | 200 | N/A |
| Jan. 2017 | 2,750 | 2,640 | 110 | 200 | N/A |
| Feb. 2017 | 3,083 | 2,509 | 573 | 200 | N/A |
| Mar. 2017 | 4,845 | 2,760 | 2,085 | 200 | N/A |
| Apr. 2017 | 2,615 | 1,823 | 792 | 200 | N/A |

16. Postpetition, the Debtor commenced and has continued making monthly payments of $750.00 to Movants, which it has tendered as adequate protection of Movants' interest in the Noxon Property.

17. Movants have not acknowledged, nor do they acknowledge, that these payments constitute adequate protection against, *inter alia*, the continuing risks to the Movants' interests in

---

[1] As reflected by the Movants' filed Claim 3.

the Property presented by the very significant deferred maintenance issues that Curtis and Mary Whitted and the Debtor have failed to cure.

18. The section 341(a) First Meeting of Creditors in this case was held on December 21, 2016. Curtis Whitted and Mary Whitted were sworn and testified on behalf of the Debtor at the 341(a) meeting.

19. At the 341(a) meeting, Mr. Whitted testified that he is the president and the pastor of the Debtor. (The Debtor is a "public charity" rather than a church.) Mrs. Whitted testified that she is the vice-president of the Debtor. Both were involved in the creation of the Debtor in 1996. The Debtor's congregation consists of 10 to 15 members.

20. The sources of the Debtor's income consist of donations and fund raising. Mr. Whitted testified that, on average, the Debtor's monthly income is between $1,200 and $2,000. Mr. Whitted further testified that the most money that the Debtor has ever had in a bank account at any time in the last year (prior to the 341(a) meeting) was $3,000 to $4,000. January and February are slow revenue months. Mr. Whitted stated that the Debtor's income picks up after February. In March, the Debtor expected to receive a net $2,500 from a bus trip that the Debtor sponsors to Washington, D.C. Soon thereafter, the Debtor expected to gross $650 from a bus trip to Manhattan.[i]

21. Before the transfer of the Property to the Debtor in 2009, Curtis and Mary Whitted personally paid the Mortgage on the Property. After the 2009 transfer, the Debtor paid (or failed to pay) the Mortgage on the Property, for which the Whitted's remain personally liable.

22. Mr. Whitted purchased a full-size 1992 motor coach in his name approximately 2 years ago. The purchase for approximately $18,000 was financed, and the Debtor pays the loan installments and all of the costs associated with the motor coach, including fuel, maintenance, tolls and storage costs.

4

23. As of the date of the section 341(a) meeting, the Debtor was paying the monthly loan installments on a late model Ford F-250 4-wheel drive truck with a plow which the Whitted's purchased, and for which they are personally liable (the title is reportedly in the Debtor's name). In response to Ms. Leonhard's expression of concern about these facts at the 341(a) meeting,[2] Mr. Whitted stated that "we are the Potter House." (The Whitted's may have begun paying the truck loan personally after those expressions of concern at the section 341(a) meeting, as the loan payments for the truck do not appear on the Debtor's monthly operating reports thereafter.)

24. The Debtor has no employees, and an average monthly postpetition gross income through April 2017 of $3,150,[3] and average monthly expenses and profit for those same months of $2,419 and $730, respectively.

25. Other than the Movants, the Debtor's creditors consist of (i) the Mid-Hudson Valley Federal Credit Union with an unsecured claim scheduled in the amount of $175.00 and (ii) Karen & Pratibha Garewal, who purchased a tax lien on a property adjacent to 54 Noxon in the amount of $846.40.

26. In other words, this is essentially a two (2) party case.

## **Relief Requested**

27. Movants seek relief from the automatic stay of Bankruptcy Code §362(a) for cause, including, without limitation, (a) bad faith; and (b) the lack of adequate protection. Bankruptcy Code §362(d)(1).

---

[2] In response to questioning at the 341(a) meeting from U.S. Trustee Trial Attorney Alicia Leonhard, Mr. Whitted testified that the Debtor has never paid any of the Whitted's personal expenses. However, although the Debtor is apparently on the title to a 2012 Ford F-250 4 wheel drive truck that the Whitted's personally purchased and financed, the Debtor pays for the loan on that truck. The truck is also used for the Whitted's personal errands (reportedly for only 5% of the time), and is driven only by the Whitted's. Mr. Whitted's 1992 full-sized motor coach that is referenced above is maintained, fueled and operated with the Debtor's funds.

[3] Excluding November 2016, which was a partial postpetition month.

28. With respect to bad faith as 'cause' to lift the automatic stay, it is plain on the face of the petition and the Debtor's monthly operating reports that the Debtor had no prospect whatsoever for reorganizing under chapter 11 when this case was filed. The Debtor has frankly acknowledged as much at the continuing case conference(s) held before this Court.

29. As to the lack of adequate protection as 'cause' to lift the automatic stay, the Debtor clearly does not have the resources to maintain, much less to repair, 54 Noxon. The 54 Noxon property is in disrepair and deteriorating, progressively diminishing its value and Movants' equity cushion.

30. No prior application has been made for the relief requested in this motion, to this or any other court.

31. A separate Memorandum of Law has been filed in support of this motion to which the Court is respectfully referred.

## **Notice**

32. Movants provided notice of this motion by first class mail to the Debtor, to Debtor's attorney, and to the United States Trustee.

33. Movants ask that the Court determine that the notice provided of this motion is sufficient under the circumstances, and that no other or further notice be required.

WHEREFORE, Joseph Montemarano and Terese Montemarano seek the entry of an order (i) modifying the automatic stay of 11 U.S.C. §362(a) pursuant to 11 U.S.C. §362(d)(1) to permit them to take those actions necessary to complete their foreclosure action and to otherwise enforce their rights under their loan documents and applicable non-bankruptcy law; and (ii) for such other and further relief as to the Court may seem just and proper.

[Signature appears on next page]

The Potter House, Inc., 16-36948 (cgm)
Motion for Order Vacating Automatic Stay, etc.

Dated: Middletown, New York
      May 19, 2017

                                  Hayward Parker O'Leary & Pinsky

                    By:    /s/ Mike Pinsky
                            Attorneys for Movants
                            225 Dolson Ave., P.O. Box 929
                            Middletown, NY 10940
                            Tel: (845) 343-6227
                            Fax: (845) 343-1927
                            mike.pinsky@hpoplaw.com